## Kershner Estate.

Argued September 28, 1956. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Paul D. Edelman,* with him *John W. Forry,* and *Paul H. Edelman,* for appellants.

*Dawson H. Muth,* for appellee.

OPINION BY WRIGHT, J., November 13, 1956:

We are here concerned with the interpretation and effect of an instrument executed and acknowledged by Joseph I. Kershner on August 30, 1948, and recorded in the office of the Recorder of Deeds in and for Berks County on September 2, 1948, in Miscellaneous Book 163 at page 617. This instrument, hereinafter referred to as the declaration, reads as follows:

"WHEREAS, I, the undersigned JOSEPH I. KERSHNER, SR., am the owner in fee of a certain farm and tract of land situate in Windsor Township, Berks County, Pennsylvania, containing 123 acres, more or less; and

"WHEREAS, I have eight (8) children who are entitled to an equal voice in the disposition of the aforesaid farm.

"NOW, THEREFORE, in consideration of natural love and affection and for the further consideration of the sum of ONE DOLLAR ($1.00) to me in hand paid by each of my said eight (8) children, I do hereby covenant and declare that I hold title to the aforesaid farm of 123 acres, more or less, in trust for the joint benefit of all of my said eight (8) children, and that I will not convey, mortgage or otherwise dispose of the title to my said farm without the written consent of each of my eight (8) children, namely: George O. Kershner, Mrs. Mary Focht, Irvin Kershner, Mrs. Katie Kershner, Joseph I. Kershner, Jr., Walter H. Kershner, Milton H. Kershner, Alvin O. Kershner.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 30th day of August A.D. 1948".

Joseph I. Kershner died on February 18, 1953, leaving a last will and testament dated July 5, 1950. This instrument was duly probated on January 29, 1954, and letters testamentary were issued to Irvin S. Kershner and George O. Kershner, the executors named therein. The will provides, inter alia, as follows:

"First: I give and devise to my son Milton H. Kershner, his heirs and assigns forever, the following tract of land which is a portion of the farm which I own:

"All That Certain piece of land in Windsor Township Berks County, Pennsylvania, near the public road from Penna. Route 122 toward Windsor Castle, bounded and described as follows . . .

"Containing 44.96 Perches of land.

"Second: I order and direct that my son, Milton H. Kershner, shall have the privilege to purchase from my estate the two fields consisting of approximately 38 acres which join the lands of . . . and also one-half of the woodland in acreage, one-half being approximately three acres adjoining the aforesaid fields. The purchase price at which my son, Milton H. Kershner, shall have a right to buy the aforesaid land shall be Forty and 00/100 Dollars ($40.00) per acre. In the event that my son, Milton H. Kershner, shall desire to exercise this privilege, he shall give notice in writing to my Executors of his intention to do so within a period of ninety (90) days after letters are taken out in my estate . . .

"Third: All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my children, excluding Milton H. Kershner, in seven (7) equal shares, share and share alike, their heirs and assigns forever, it being my intention to exclude my son, Milton H. Kershner, in this residuary clause of my Will because of the benefits bestowed upon him by the first two paragraphs hereof".

On March 5, 1954, Milton H. Kershner gave notice to the executors "of his desire to purchase the above referred to real estate". Milton then petitioned the court below for a citation directed to the executors to show cause why a decree should not be made ordering

them to deliver to him "a deed for and possession to the real estate devised to your Petitioner by the decedent, upon his making payment for the same". This petition was presented under the provisions of Section 735 of the Fiduciaries Act of 1949.[1] The executors filed an answer averring that the decedent died seized of no real estate whatsoever. The other five children of Joseph I. Kershner filed a petition to dismiss the citation, which petition contained a similar averment. By stipulation, the parties agreed that the decedent had acquired title to the real estate mentioned in the first and second paragraphs of his will by certain specified conveyances. They further stipulated that, during his lifetime, Kershner "executed and delivered to his children a certain Declaration of Trust with respect to the said Farm", namely, the declaration of August 30, 1948. The court below made the citation absolute and directed the executors to "comply with the testamentary dispositions, devise and options to purchase". Exceptions filed by the executors were dismissed, and a final decree was entered. This appeal followed.

The lower court took the position "that the intended trust was passive in all respects, that it was executed in the trustee, the intended settlor, the decedent Joseph I. Kershner, that all rights conferred, under the so-called declaration of trust, given to the named eight children, were testamentary in character and were superseded by the testator's dispositions under the probated will". Appellee contends that the declaration "does not create a trust", but that, if it does create a trust, "it is of a testamentary character and is revoked by the provisions of his Will". Appellants contend

---

[1] Act of April 18, 1949, P. L. 512, 20 PS 320.735. It should perhaps be noted that, under this section, petitioner would be entitled to possession only, not to a deed.

that the declaration created a trust which was not testamentary in character; that the trust, being passive, was executed by the Statute of Uses; and that the eight children named immediately "became vested in fee of the whole title".

Although the problem is not without difficulty, our conclusion is that the result arrived at by the court below cannot be approved. We gave considerable thought to the theory advanced by appellee that, even though so designated, the declaration was not a trust at all. But if this contention is correct, the alternative interpretation must inevitably be that the declaration was a contract which was breached by the decedent when he wrote his will. In the final analysis, we are inclined to adopt appellants' contention that the declaration created a trust which was passive, and not testamentary in character.

Since we agree with the court below that the intended trust was passive, little need be said on this point. The Statute of Uses was passed for the purpose of destroying such passive, inactive, or dry uses and trusts by executing them, that is, by converting the equitable interests of the beneficiaries into legal interests. This venerable statute is in force in Pennsylvania: *Sheridan v. Coughlin*, 352 Pa. 226, 42 A. 2d 618.

We cannot agree with the court below, however, that the trust was testamentary in character. Sections 56 and 57 of the Restatement of Trusts deal with the situations in which an otherwise inter vivos trust is rendered testamentary. Section 57 concerns reservations placed by the settlor in the trust instrument. It is clearly not applicable to the instant case, since the declaration here contains no reservations whatsoever. Section 56 provides that the intended trust is testamentary if the settlor "purports to create a trust inter vivos but

no interest passes to the beneficiary before the death of the settlor". The court below relied upon Section 56, being of the opinion that no interest passed to the beneficiaries before the death of the settlor. This conclusion was apparently based upon the inference "that the immediate status would continue to his death, and possession of the corpus of the trust would then pass to the named children". Assuming arguendo the correctness of this inference, the fact that actual possession and enjoyment were deferred does not prohibit or prevent the vesting of the interest: *Damiani v. Lobasco,* 367 Pa. 1, 79 A. 2d 268. Our primary inquiry must be the intention of the settlor, and that intention must be ascertained from the language used: *Thompson Trust,* 348 Pa. 228, 35 A. 2d 261. There is nothing in the declaration indicating an intention to prevent the immediate vesting of the beneficial interest. Since the settlor has it in his power to define exactly what was to be given and what reserved, he must be held to have intended to give everything not expressly reserved, and the writing will be construed most strongly against him: *Wood v. Paul,* 250 Pa. 508, 95 A. 720.

The decree of the lower court is reversed, and the citation is discharged.